

DISTRICT OF COLUMBIA, ss:

## DECLARATION OF TOM HEINEMANN

I, Tom Heinemann, declare and say as follows:

1. I am an Assistant Legal Adviser in the Office of the Legal Adviser for the Department of State, Washington, D.C. This office has responsibility for extradition requests, and I am charged with the extradition case of June Hopkins Saia. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The relevant and applicable treaty provisions in full force and effect between the United States and France are found in the Extradition Treaty between the United States of America and France, with Agreed Minute, signed on 23 April 1996, (the "1996 Treaty"), and the Instrument as contemplated by Article 3, paragraph 2, of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003, as to the application of the Extradition Treaty between the United States of America and France signed 23 April 1996, signed 30 September 2004 (the "Instrument"). Copies of the 1996 Treaty and Instrument are attached to this declaration.

3. In accordance with the provisions of the 1996 Treaty and Instrument, the Embassy of France has submitted Diplomatic Note No. 2020-0071112, dated 5 February 2020, formally requesting the extradition of June Hopkins Saia. A copy of the diplomatic note is attached to this declaration.



GOVERNMENT
EXHIBIT
2

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

y That Tom Heinemann, whose name is subscribed to the document hereunto annexed, was
of subscribing the same Attorney Adviser, Office of the Legal Adviser, Department of
States of America, and that full faith and credit are due to his acts as such.

*This certificate is not valid if it is removed or altered in any way whatsoever*



In testimony whereof, I, Michael R. Pompeo, Secretary of State ,
have hereunto caused the seal of the Department of State to be
affixed and my name subscribed by the Assistant Authentication
Officer, of the said Department, at the city of Washington, in the
District of Columbia, this second day of March, 2020.

*Issued pur     CH3     te of*
*Sept. 15,     Stat.     22*
*USC 2657,     C 265     SC*
*301; 28 U3     3 et. se     SC*
*1443(f); RU     Federa     of*
*Civil Proce*

Secretary of State

By _____

Assistant Authentication Officer,
Department of State

4. In accordance with Article 22 of the 1996 Treaty, the United States provides legal representation in the U.S. courts for France in its extradition requests, and France provides legal representation in its courts for extradition requests made by the United States.

5. The offense for which extradition is sought is covered by Article 2 of the 1996 Treaty.

6. Under Article 11 of the 1996 Treaty, as amended by Item II of the Instrument, documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State are admissible in extradition proceedings without further certification, authentication or other legalization. Therefore, such documents satisfy the authentication requirements without the need for certification by the U.S. Embassy in Paris. France, in submitting documents in the instant case that bear the certificate or seal of the Ministry of Justice, has complied with the Treaty and Instrument with respect to authentication.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on February 28, 2020.

_____
TOM HEINEMANN

Attachments:
1. Copy of Note.
2. Copies of Treaty and Instrument.

*Ambassade de France*
*aux Etats-Unis*

L/LEI
2020 FEB -6 P 3: 04
DEPARTMENT OF STATE

L'Ambassade de France présente ses compliments au Département d'Etat et a l'honneur de lui faire parvenir sous ce pli, avec les pièces de justice et leur traduction (le tout en double exemplaire), une demande d'extradition formée auprès du Gouvernement américain contre la nommée June HOPKINS SAIA, épouse Walsh née le 21 octobre 1961 à Stionehem, Massachussetts (Etats-Unis), de nationalité américaine. L'intéressé fait l'objet d'un mandat d'arrêt, délivré le 3 août 2018, par Mme Virginie VAN GEYTE, vice-présidente chargée de l'instruction au tribunal de grande instance de Paris pour des faits de tentative d'assassinat.

Cette demande accompagnée de sa traduction en langue anglaise, est transmise en application du traité d'extradition du 23 avril 1996, entre la France et les Etats-Unis d'Amérique, et notamment de l'article 10. Ce traité d'extradition a été amendé par le traité d'extradition entre les Etats-Unis et l'Union Européenne du 30 septembre 2004.

L'Ambassade de France remercie le Département d'Etat de bien vouloir saisir de cette demande les autorités judiciaires américaines et lui faire connaître la suite qu'elles lui auront réservée.

L'Ambassade de France prie, en outre, le Département d'Etat, de bien vouloir inviter les autorités judiciaires américaines à préciser au moment de la remise de l'intéressé la durée de la détention subie au seul titre extraditionnel dans leur pays par le susnommé.

L'Ambassade de France saisit cette occasion pour renouveler au Département d'Etat les assurances de sa très haute considération./.

Washington, le 6 février 2020

**Département d'Etat**
**Office of The Legal Advisor**
**Law Enforcement & Intelligence**
**Mme Amber Kluesener**

**Département de la Justice**
**Bureau des Affaires Internationales**
**M. Thomas Burrows**

*Ambassade de France
aux Etats-Unis*

**UNOFFICIAL TRANSLATION**

**Re: Request for an extradition of Mrs. June HOPKINS SAIA, épouse WALSH**

The Embassy of France presents its compliments to the Department of State and has the honor to transmit, together with court documents and their translation (all in duplicate), a request to the American government for the extradition of Mrs. June HOPKINS SAIA, épouse WALSH, born on October 21st, 1961, in Stionehem, Massachussetts, an American national. On August 3rd, 2018, she was issued an arrest warrant by Mrs. Virginie VAN GEYTE, the vice-president of the district court of Paris (France) for attempted murder.

This request, accompanied by an English translation, is transmitted pursuant to the Extradition Treaty between the United States of America and France, with Agreed Minute, signed on April 23rd, 1996 (the "1996 Treaty") and the Instrument as contemplated by Article 3, paragraph 2 of the Agreement on Extradition between the United States of America and the European Union signed on June 25th, 2003, as to the application of the Extradition Treaty between the United States of America and France signed April 23rd, 1996, signed September 30th, 2004 (the "Instrument").

The Embassy of France would be very grateful to the Department of State for referring this request to the American judicial authorities and for notifying it of their subsequent actions in this regard.

The Embassy of France would be most obliged to the Department of State for asking the American judicial authorities to specify, at the time of the person's release, the length of detention he served for extradition purposes alone.

The Embassy of France avails itself of this opportunity to renew to the Department of State the expression of its highest consideration./.

Washington, DC, February 5th, 2020

**Department of State
Mrs. Amber KLUESENER
Supervisory Paralegal Specialist
Office of The Legal Advisor – Law Enforcement & Intelligence**

**Department of Justice
Mr. Thomas BURROWS
Office of International Affairs**

| 105TH CONGRESS 1st Session | SENATE | TREATY DOC. 105–13 |
|---|---|---|

# EXTRADITION TREATY WITH FRANCE

---

# MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA AND FRANCE, SIGNED AT PARIS ON APRIL 23, 1996



JULY 9, 1997.—Treaty was read the first time and, together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

---

U.S. GOVERNMENT PRINTING OFFICE

39–118        WASHINGTON : 1997

# LETTER OF TRANSMITTAL

–––––––

THE WHITE HOUSE, *July 9, 1997.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Extradition Treaty between the United States of America and France, signed at Paris on April 23, 1996.

In addition, I transmit, for the information of the Senate, the report of the Department of State with respect to the Treaty. As the report explains, the Treaty will not require implementing legislation.

This Treaty will, upon entry into force, enhance cooperation between the law enforcement communities of both countries. It will thereby make a significant contribution to international law enforcement efforts.

The provisions in this Treaty, which includes an Agreed Minute, follow generally the form and content of extradition treaties recently concluded by the United States.

I recommend that the Senate give early and favorable consideration to the Treaty and give its advice and consent to ratification.

WILLIAM J. CLINTON.

Case 1:19-mj-00378-LPA   Document 12-2   Filed 03/13/20   Page 8 of 52

# LETTER OF SUBMITTAL

---

DEPARTMENT OF STATE,
*Washington, June 13, 1997.*

THE PRESIDENT: I have the honor to submit to you the Extradition Treaty between the United States of America and France ("the Treaty"), signed at Paris on April 23, 1996. I recommend that the treaty, which includes an Agreed Minute, be transmitted to the Senate for its advice and consent to ratification.

In many respects, the Treaty follows closely the form and content of extradition treaties recently concluded by the United States. Some of the Treaty's provisions, however, differ from those found in most of our other modern extradition treaties for reasons discussed in the Technical Analysis produced by the United States negotiating delegation. The treaty represents part of a concerted effort by the Department of State and the Department of Justice to develop modern extradition relationships to enhance the United States ability to prosecute serious offenders including, especially, narcotics traffickers and terrorists.

The Treaty marks a significant step in bilateral cooperation between the United States and France. Upon entry into force, it will replace the Treaty of Extradition between the United States of America and the Republic of France signed at Paris on January 6, 1909, and entered into force on July 27, 1911, and the Supplementary Extradition Convention signed at Paris on February 12, 1970, with exchanges of letters of June 2 and 11, 1970, and entered into force on April 3, 1971. That treaty has become outmoded, and the new Treaty will provide significant improvements. The Treaty can be implemented without legislation.

Article 1 obligates each Contracting State to extradite to the other, pursuant to the provisions of the Treaty, any person whom the competent authorities in the Requesting State have charged with or convicted of an extraditable offense.

Article 2(1) defines extraditable offenses as acts punished under the laws of both States by deprivation of liberty for a maximum of at least one year, or by a more severe penalty. Use of such a "dual criminality" clause rather than a list of offenses covered by the Treaty obviates the need to renegotiate or supplement the Treaty as additional offenses become punishable under the laws of both Contracting States.

Article 2(2) defines an extraditable offense to include also an attempt or a conspiracy to commit, or participation in the commission of, an extraditable offense.

Additional flexibility is provided by Article 2(3), which provides that an offense shall be considered an extraditable offense: (1) whether or not the laws in the Contracting States place the offense

within the same category of offenses or describe the offense by the same terminology; or (2) whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court.

With regard to an offense committed outside the territory of the Requesting State, Article 2(4) provides that extradition shall be granted when the laws of the Requested State authorize the prosecution or provide for the punishment of that offense in similar circumstances. The United States recognizes the extraterritorial application of many of its criminal statutes and frequently makes requests for fugitives whose criminal activity occurred in foreign countries with the intent, actual or implied, of affecting the United States.

If an extradition request concerns distinct acts, each punishable by deprivation of liberty in both States but not all of which meet the requirements of Article 2(1) and 2(2), Article 2(5) nevertheless requires extradition for all of the acts.

Article 2(6) provides that extradition shall be granted pursuant to the terms of Article 2(1) and 2(2) in matters concerning tax, customs duty, and foreign exchange offenses.

Article 3(1) declares that neither State has an obligation to extradite its own nationals, but the executive authority of the United States shall have the discretion to do so. The nationality of the person sought shall be the nationality of the person at the time the offense was committed.

Article 3(2) requires a State that refuses an extradition request solely on the basis of the nationality of the person sought to submit the case to its authorities for prosecution, if so requested by the Requesting State.

As is customary in extradition treaties, Article 4 incorporates a political offense exception to the obligation to extradite. Article 4(1) states that France shall not grant extradition for an offense considered by France to be a political offense, an offense connected with a political offense, or an offense inspired by political motives. Article 4(1) also states that the United States shall not grant extradition for an offense considered by the United States to be a political offense.

Article 4(2) specifies six categories of offenses that shall not be considered to be political offenses:

(a) a murder or other willful crime against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family, or any attempt or conspiracy to commit, or participation in, any of the foregoing offenses;

(b) an offense for which both Contracting Parties are obliged pursuant to a multilateral agreement to extradite the requested person or to submit the case to their competent authorities for decision as to prosecution;

(c) a serious offense involving an attack against the life, physical integrity or liberty of internationally protected persons, including diplomatic agents;

(d) an offense involving kidnapping, the taking of a hostage or any other form of unlawful detention;

(e) an offense involving the use of a bomb, grenade, rocket, automatic firearm or letter or parcel bomb if this use endangers persons; or

(f) an attempt or conspiracy to commit, or participation in, any of the offenses listed in paragraphs 2(b), 2(c), 2(d) or 2(e) above.

Article 4(3) creates a regime similar to that of the European Convention on Terrorism, in that the Requested State may deny extradition for any of the offenses mentioned in paragraphs 2(b)-2(f) above, in accordance with the provisions of Article 4(1). However, in evaluating the character of an offense, the Requested State is required to consider its particularly serious nature, if applicable, including that it created a collective danger to life, physical integrity or liberty of persons, that it affected persons not connected to the motives behind it, or that cruel or treacherous means were used in the commission of the offense.

Article 4(4) provides that extradition shall not be granted if the executive authority in the case of the United States or the competent authorities in the case of France have substantial grounds for believing that the request was for the purpose of prosecuting or punishing a person on account of that person's race, religion, nationality or political opinions.

Article 5 permits the parties to deny extradition for an offense that is exclusively a military offense (for example, desertion).

Article 6 permits denial of an extradition request when surrender of the person might entail exceptionally serious consequences related to age or health.

Article 7(1) permits denial of an extradition request for an offense punishable by death in the Requesting State but not in the Requested State, unless the Requesting State provides the assurance that the death penalty will not be imposed or, if imposed, will not be carried out. Article 7(2) declares that the death penalty, if imposed by the courts of the Requesting State, shall not be carried out in instances when a Requesting State has provided an assurance in accordance with Article 7(1).

Article 8 bars extradition when the person sought has been convicted or acquitted in the Requested State for the same offense, but does not bar extradition if the competent authorities in the Requested State have declined to prosecute or have decided to discontinue criminal proceedings against the person sought.

Article 9 states that extradition shall be denied if prosecution or execution of the penalty would be barred by the lapse of time under the laws of the Requested State, but requires that acts in the Requesting State that would interrupt or suspend the prescriptive period are to be taken into account by the Requested State to the extent possible under its laws.

Article 10 establishes the procedures and describes the documents that are required to support an extradition request. The Article requires that all requests for extradition be submitted through the diplomatic channel. Article 10(3)(c) provides that a request for the extradition of a person sought for prosecution be supported by a duly authenticated copy of the warrant or order of arrest and, for

requests by the United States, the charging document, or for requests by France, the original or a duly authenticated copy of the warrant or order of arrest and such information as would justify the committal for trial of the person if the offense had been committed in the United States.

Article 11 establishes the procedures under which documents submitted pursuant to the provisions of this Treaty shall be received and admitted into evidence in each State.

Article 12 requires all documents submitted by the Requesting State to be translated into the language of the Requested State.

Article 13 sets forth procedures for the provisional arrest and detention of a person sought pending presentation of the formal request for extradition. A request for provisional arrest may be submitted directly between the U.S. Department of Justice and the Ministry of Justice of the French Republic by means of the facilities of the International Criminal Police Organization (INTERPOL) or through the diplomatic channel. Article 13(4) provides that if the Requested State's executive authority has not received the request for extradition and supporting documentation within sixty days after the provisional arrest, the person may be discharged from custody. Article 13(5) provides explicitly that discharge from custody pursuant to Article 13(4) does not prejudice subsequent re-arrest and extradition upon later delivery of the extradition request and supporting documents.

Article 14 sets forth procedures by which the Requested State may seek additional information in support of an extradition request to fulfill the requirements of the Treaty and provides for release from custody of a person under arrest for purposes of extradition if the additional information is not sufficient or not received within the time specified.

Article 15 specifies the procedures governing surrender and return of persons sought. It requires the Requested State to provide prompt notice to the Requesting State through the diplomatic channel regarding its extradition decision. If the request is denied in whole or in part, Article 15(2) requires the Requesting State to provide information regarding the reasons therefor. If extradition is granted, the authorities of the Contracting States shall agree on the date and place for surrender of the person sought. If the person is not removed from the territory of the United States within the time prescribed by its law or within 30 days from the surrender date set in accordance with Article 15(3) in the case of France, that person may be discharged from custody and the Requested State may subsequently refuse extradition for the same offense.

Article 16 concerns temporary and deferred surrender. If a person whose extradition is sought is being prosecuted or is serving a sentence in the Requested State, that State may temporarily surrender the person to the Requesting State solely for the purpose of prosecution. Alternatively, the Requested State may postpone the extradition proceedings until its prosecution has been concluded and the sentence has been served.

Article 17 sets forth a non-exclusive list of factors to be considered by the Requested State in determining to which State to surrender a person sought by more than one State.

Article 18 provides for the seizure and surrender to the Requesting State of property connected with the offense for which extradition is granted, to the extent permitted under the law of the Requested State. Such property may be surrendered even when extradition cannot be effected due to the death, disappearance, or escape of the person sought. Surrender of property may be deferred if it is needed as evidence in the Requested State and may be conditioned upon satisfactory assurances that it will be returned to the Requested State as soon as practicable. Article 18(3) imposes an obligation to respect the rights of third parties in affected property.

Article 19 sets forth the rule of speciality. It provides, subject to specific exceptions, that a person extradited under the Treaty may not be detained, tried, convicted, punished, or subjected to any restriction of his freedom for an offense other than that for which extradition has been granted, unless the Requested State has given it consent or the extradited person leaves the Requesting State after extradition and voluntarily returns to it or fails to leave the Requesting State within thirty days of being free to do so. Article 19(2) addresses situations where the denomination of an offense for which a person has been extradited is altered during the proceedings in the Requested State.

Article 20 provides that the Requesting State may not extradite a person to a third State for an offense committed prior to the original surrender unless the Requested State consents or the person did not leave the territory of the Requesting State within thirty days when given an opportunity to do so, or returned after having left it.

Article 21 governs the transit through the territory of one Contracting State of a person being surrendered to the other State by a third State.

Article 22 contains provisions on representation and expenses. The Requested State is required to advise and assist the Requesting State in accordance with the Agreed Minute on Representation that forms an integral part of the Treaty and is discussed in detail in the Technical Analysis.

Under Article 22(2), the Requesting State is required to bear the expenses related to the translation of documents and the transportation of the person surrendered. Article 22(3) clarifies that neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons sought under the Treaty.

Article 23 states that the United States Department of Justice and the Ministry of Justice of the French Republic may consult with each other directly or through the facilities of INTERPOL in connection with the processing of individual cases and in furtherance of maintaining and improving Treaty implementation procedures.

Article 24(1), like the parallel provision in almost all recent United States extradition treaties, states that the Treaty shall apply to offenses committed before as well as after the date the Treaty enters into force. Upon entry into force of the Treaty, Article 24(2) provides that the current Treaty of Extradition between the United States and France signed January 6, 1909 and the Supplementary Convention signed February 12, 1970, with exchanges of letters

signed June 2 and 11, 1970, shall cease to have effect, except for any proceedings in which extradition documents have already been submitted to the courts of the Requested State at the time the Treaty enters into force.

Article 25 provides that each Contracting State shall notify the other of the completion of the constitutional procedures required for ratification of the Treaty, and the Treaty shall enter into force on the first day of the second month following the date of receipt of the last notification.

Under Article 26, either Contracting State may terminate the Treaty at any time upon written notice to the other Contracting State, with termination effective six months after the date of receipt of such notice.

As noted above, a Technical Analysis explaining in detail the provisions of the Treaty is being prepared by the United States negotiating delegation and will be submitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Treaty, including the Agreed Minute, by the Senate at an early date.

Respectfully submitted,

MADELEINE ALBRIGHT.



EXTRADITION TREATY

BETWEEN

THE UNITED STATES OF AMERICA

AND

FRANCE

(1)

The President of the United States of America and the President of the French Republic,

Recalling the Extradition Treaty and accompanying Protocol between the United States of America and the Republic of France signed at Paris January 6, 1909 and the Supplementary Convention signed at Paris February 12, 1970 with Exchanges of Letters of June 2 and 11, 1970;

Noting that these treaties continue in force between the Government of the United States of America and the Government of the French Republic until entry into force of this Treaty; and

Desiring to provide for more effective cooperation between the two States in the suppression of crime and to facilitate relations between the two States in the area of extradition by concluding a treaty for the extradition of offenders;

Have decided to conclude a new extradition treaty and have appointed as their plenipotentiaries for this purpose:

The President of the United States of America:

The Honorable, Janet Reno, Attorney General of the United States of America;

The President of the French Republic:

The Honorable, Jacques Toubon, Minister of Justice;

Who, having communicated to each other their respective full powers, which were found in good and due form, have agreed as follows:

-2-

## Article 1
### Obligation to Extradite

The Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the competent authorities in the Requesting State have charged with or found guilty of an extraditable offense.

## Article 2
### Extraditable Offenses

1. Acts shall be extraditable if they are punished under the laws in both States by deprivation of liberty for a maximum of at least one year or by a more severe penalty. If extradition is requested for purposes of enforcing a judgment, the time remaining to be served must be at least six months.

2. An offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, or participation in the commission of, an offense described in paragraph 1.

3. For the purposes of this Article, an offense shall be an extraditable offense:

    (a) whether or not the laws in the Contracting States place the offense within the same category of offenses or describe the offense by the same terminology; or

(b) whether or not the offense is one for which
United States federal law requires proof or an
element of proof, such as passage from one
state to another, the use of the mails, wire,
and other facilities of interstate or foreign
commerce, or the effects upon such commerce,
since such an element is required for the sole
purpose of establishing the jurisdiction of
United States federal courts.

4. Extradition shall be granted for an extraditable
offense committed outside the territory of the Requesting
State, when the laws of the Requested State authorize the
prosecution or provide for the punishment of that offense in
similar circumstances.

5. If the extradition request concerns distinct acts,
each punishable under the laws of the two States by the
deprivation of liberty, and if some of the acts do not fulfill
the conditions set forth in Paragraphs 1 and 2 of this Article,
the Requested State shall nonetheless grant extradition based
upon such acts.

6. In matters concerning tax, customs duty, and
foreign exchange offenses, extradition shall be granted
pursuant to the terms set forth in paragraphs 1 and 2 of this
Article.

-4-

### Article 3
### Nationality

1.    There is no obligation upon the Requested State to grant the extradition of a person who is a national of the Requested State, but the executive authority of the United States shall have the power to surrender a national of the United States if, in its discretion, it deems it proper to do so.  The nationality of the person sought shall be the nationality of that person at the time the offense was committed.

2.    If extradition is refused solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its authorities for prosecution.

### Article 4
### Political Offenses

1.    Extradition shall not be granted by France when the offense for which extradition is requested is considered by France as a political offense or as an offense connected with a political offense or as an offense inspired by political motives.  Extradition shall not be granted by the United States when the offense for which extradition is requested is considered by the United States to be a political offense.

-5-

2.   For the purposes of this Treaty, and in accordance with paragraph 1 of this Article, the following offenses shall not be considered to be political offenses:

    (a)   a murder or a willful crime against the person of a Head of State of one of the Contracting States, or a member of his or her family, or any attempt or conspiracy to commit, or participation in, any of the foregoing offenses;

    (b)   an offense for which both Contracting States are obliged pursuant to a multilateral agreement to extradite the requested person or to submit the case to the competent authorities for decision as to prosecution;

    (c)   a serious offense involving an attack against the life, physical integrity or liberty of internationally protected persons, including diplomatic agents;

    (d)   an offense involving kidnapping, the taking of a hostage or any other form of unlawful detention;

    (e)   an offense involving the use of a bomb, grenade, rocket, automatic firearm or letter or parcel bomb if this use endangers persons; or

-6-

      (f)  an attempt or conspiracy to commit, or
participation in, any of the offenses listed
in paragraphs 2(b), 2(c), 2(d) or 2(e) of this
Article.

    3.  The Requested State may deny extradition of persons
who committed any of the offenses mentioned in paragraphs 2(b),
2(c), 2(d), 2(e), and 2(f) of this Article pursuant to the
provisions of paragraph 1 of this Article.

    In evaluating the character of the offense, the
Requested State shall take into consideration the particularly
serious nature of the offense, including:

      (a)  that it created a collective danger to the
life, physical integrity or liberty of persons;

      (b)  that it affected persons foreign to the
motives behind it; or

      (c)  that cruel or treacherous means have been used
in the commission of the offense.

    4.  Extradition shall not be granted if the executive
authority in the case of the United States or the competent
authorities in the case of France have substantial grounds for
believing that the request was for the purpose of prosecuting
or punishing a person on account of that person's race,
religion, nationality or political opinions.

-7-

## Article 5
### Military Offenses

Extradition shall not be granted if the offense in respect of which it is requested is exclusively a military offense.

## Article 6
### Humanitarian Considerations

This Treaty does not prevent the executive authority in the case of the United States or the competent authorities in the case of France from denying extradition when surrender of the person might entail exceptionally serious consequences related to age or health.

## Article 7
### Capital Punishment

1.  When the offense for which extradition is sought is punishable by death under the laws in the Requesting State and is not punishable by death under the laws in the Requested State, the Requested State may refuse extradition unless the Requesting State provides the assurance that the death penalty will not be imposed or, if imposed, will not be carried out.

-8-

    2.    In instances in which a Requesting State provides the assurance in accordance with this Article, the death penalty, if imposed by the courts of the Requesting State, shall not be carried out.

## Article 8
### Prior Prosecution

    1.    Extradition shall not be granted when the person sought has been finally convicted or acquitted in the Requested State for the offense for which extradition is requested.

    2.    Extradition shall not be refused on the grounds that the authorities in the Requested State have decided not to prosecute the person sought for the acts for which extradition is requested, or to discontinue any criminal proceedings which have been instituted against the person sought for those acts.

## Article 9
### Lapse of Time

    1.    Extradition shall be denied if prosecution of the offense or execution of the penalty has been barred by lapse of time under the laws of the Requested State.

    2.    Acts in the Requesting State that would interrupt or suspend the prescriptive period are to be taken into account by the Requested State to the extent possible under its laws.

-9-

## Article 10

### Extradition Procedures and Required Documents.

1.  All requests for extradition shall be submitted through the diplomatic channel.

2.  All requests shall be supported by:

    (a)  documents, statements, or other types of information which state the nationality, probable location, and also describe the identity of the person sought in order to establish that the person is the subject of the prosecution or conviction;

    (b)  information describing the facts of the offense and the procedural history of the case;

    (c)  the text of the provisions describing the offense for which extradition is requested; and

    (d)  the text of the law prescribing the punishment for the offense.

3.  A request for extradition of a person who is sought for prosecution shall also be supported by:

    (a)  in the case of a request submitted by the United States, a duly authenticated copy of the warrant or order of arrest and the charging document; or

-10-

      (b)  in the case of a request submitted by France, an original or a duly authenticated copy of the warrant or order of arrest and such information as would justify the committal for trial of the person if the offense had been committed in the United States.

    4.  A request for extradition relating to a person who has been found guilty or convicted of the offense for which extradition is sought shall also be supported by:

      (a)  in the case of a request by the United States, if the person has been convicted, the original or a duly authenticated copy of the final judgment of conviction, or, if the person has been found guilty but has not yet been sentenced, a statement by a judicial authority that the person has been found guilty, and a duly authenticated copy of the warrant of arrest;

      (b)  in the case of a request by France, the original or a duly authenticated copy of the final judgment of conviction;

      (c)  in all cases where a sentence has been imposed, a statement of the remainder of the sentence to be served; and

      (d)  in the case of a person who has been found guilty in absentia, the documents required by paragraph 3.

-11-

## Article 11
### Admissibility of Documents

The documents which accompany an extradition request shall be received and admitted as evidence in extradition proceedings if:

    (a)   in the case of a request from the United States, they are transmitted through the diplomatic channel;

    (b)   in the case of a request from France, they are certified by the principal diplomatic or principal consular officer of the United States resident in France, as provided by the extradition laws of the United States, or they are certified or authenticated in any other manner accepted by the laws of the United States.

## Article 12
### Translation

All documents submitted by the Requesting State shall be translated into the language of the Requested State.

-12-

## Article 13
### Provisional Arrest

1.    In case of urgency, a Contracting State may request the provisional arrest of the person sought pending presentation of the request for extradition.  A request for provisional arrest may be transmitted directly between the United States Department of Justice and the Ministry of Justice of the French Republic, by means of the facilities of the International Criminal Police Organization (INTERPOL), or through the diplomatic channel.

2.    The application for provisional arrest shall contain:

    (a)    a description of the person sought and information concerning the person's nationality;

    (b)    the location of the person sought, if known;

    (c)    a brief statement of the facts of the case, including the location and approximate date of the offense;

    (d)    a description of the laws violated;

    (e)    a statement of the existence of a warrant of arrest or a finding of guilt or judgment of conviction against the person sought; and

    (f)    a statement that a request for extradition for the person sought will follow.

3.   The Requesting State shall be notified without delay of the disposition of its application and the reasons for any denial.

4.   A person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the Requested State has not received the formal request for extradition and the supporting documents required by Article 10.

5.   The fact that the person sought has been discharged from custody pursuant to paragraph 4 of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

Article 14

Additional Information

1.   If the Requested State considers that the information furnished in support of a request for extradition is not sufficient to fulfill the requirements of this Treaty, that State may request that additional information be furnished within such reasonable length of time as it specifies.  Such additional information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of France or through the diplomatic channel.

-14-

2. If the person sought is under arrest for purposes of extradition and the additional information furnished is not sufficient or is not received within the time specified, the person may be released from custody. Such release shall not preclude the Requesting State from making another request in respect of the same or any other offense.

3. When the person is released from custody in accordance with paragraph 2, the Requested State shall notify the Requesting State as soon as practicable.

Article 15

Decision and Surrender

1. The Requested State shall notify as soon as possible the Requesting State of its decision on the request for extradition.

2. If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial. The Requested State shall provide copies of pertinent judicial decisions upon request.

3. If the request for extradition is granted, the authorities of the Contracting States shall agree on the date and place for the surrender of the person sought. The Requested State shall also notify the Requesting State of the length of time the person has spent in detention for purposes of extradition.

-15-

    4.   If the person sought is not removed from the territory of the Requested State within the time prescribed by its law in the case of the United States, or in the case of France within 30 days from the date set for the surrender in accordance with paragraph 3 of this Article, that person may be discharged from custody, and the Requested State may subsequently refuse extradition for the same offense.

    5.   In the event circumstances beyond the control of either Contracting State prevent the surrender or reception of the person sought, the Contracting States shall agree on a new date for the surrender, and the provisions of paragraph 4 of this Article shall apply.


Article 16

Temporary and Deferred Surrender


    1.   If the extradition request is granted in the case of a person who is being prosecuted or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution.  The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by mutual agreement of the Contracting States.

-16-

2.   The Requested State may postpone the extradition
proceedings against a person who is being prosecuted or who is
serving a sentence in that State.  The postponement may
continue until the prosecution of the person sought has been
concluded and any sentence has been served.


Article 17

Requests for Extradition Made by Several States


If the Requested State receives requests from the other
Contracting State and from any other State or States for the
extradition of the same person, either for the same offense or
for different offenses, the executive authority in the case of
the United States and the competent authorities in the case of
France shall determine to which State the person will be
surrendered.  In making its decision, the Requested State shall
consider all relevant factors, including but not limited to:
whether the requests were made pursuant to treaty; the place
where each offense was committed; the respective interests of
the requesting States;  the gravity of the offenses; the
nationality of the person sought and the victim; the
possibility of further extradition between the requesting
States; and the chronological order in which the requests were
received from the requesting States.

-17-

## Article 18

### Seizure and Surrender of Property

1.   To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all articles, documents, and evidence connected with the offense in respect of which extradition is granted.  The articles, documents, and evidence mentioned in this Article may be surrendered even when the extradition cannot be effected because of the death, disappearance, or escape of the person sought.

2.   The Requested State may condition the surrender of the property upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable.  The Requested State may also defer the surrender of such property if it is needed as evidence in the Requested State.

3.   The rights of third parties in such property shall be duly respected.

## Article 19

### Rule of Speciality

1.   A person extradited under this Treaty shall not be detained, tried, convicted, punished, or subjected to any restriction of his freedom in the territory of the Requesting

-18-

State for any act prior to the person's surrender, other than
the offense for which extradition has been granted, except in
the following cases:

        (a)  when the Requested State has given its
             consent.  A request for such purpose may be
             submitted, together with the documents listed
             in Article 10, and any statements made by the
             person extradited concerning the offense for
             which the consent of the Requested State is
             requested; or

        (b)  when, having had the opportunity to do so, the
             person extradited did not leave the territory
             of the Requesting State within 30 days of his
             final release, or returned to the territory of
             the Requesting State after having left it.

    2.   If the denomination of the offense for which a
person has been extradited is altered during the proceedings
under the laws of the Requesting State or such a person is
charged with a differently denominated offense, the person
shall be prosecuted or sentenced provided the offense under its
new legal description is:

        (a)  based on the same set of facts contained in
             the extradition request and its supporting
             documents; and

        (b)  punishable by the same maximum penalty as, or
             a lesser maximum penalty than, the offense for
             which he was extradited.

-19-

## Article 20

### Reextradition to a Third State

1.    When a person has been surrendered by the Requested State to the Requesting State, the Requesting State shall not surrender the person extradited to a third State for an offense prior to the person's surrender, unless:

      (a)   the Requested State consents to such surrender; or

      (b)   the person extradited, having had the opportunity to do so, did not leave the territory of the Requesting State within 30 days of the person's final release, or returned to the territory of the Requesting State after having left it.

2.    Before granting a request under paragraph 1(a) above, the Requested State may request the documents referred to in Article 10, and any statements made by the person extradited with respect to the offense for which the consent of the Requested State is requested.

## Article 21

### Transit

1.    Either Contracting State may authorize transportation through its territory of a person surrendered to the other State by a third State.  A request for transit shall

-20-

be made through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the French Republic. The facilities of INTERPOL may also be used to transmit such a request. It shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit may be detained in custody during the period of transit.

2. No authorization is required where air transportation is being utilized by one Contracting State and no landing is scheduled on the territory of the other Contracting State. If an unscheduled landing occurs on the territory of the other Contracting State, that Contracting State may require the request for transit as provided in paragraph 1. That Contracting State shall detain the person to be transported until the request for transit is received and the transit is effected, so long as the request is received within 96 hours of the unscheduled landing.

## Article 22
### Representation and Expenses

1. The Requested State shall advise and assist the Requesting State in connection with a request for extradition. Such advice and assistance shall be rendered in accordance with the provisions of the accompanying agreed minute, which shall form an integral part of this Treaty.

-21-

2.    The Requesting State shall bear the expenses related to the translation of documents and the transportation of the person surrendered.  The Requested State shall pay all other expenses incurred in that State by reason of the extradition proceedings.

3.    Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons sought under this Treaty.

Article 23

Consultation

The United States Department of Justice and the Ministry of Justice of the French Republic may consult with each other directly or through the facilities of INTERPOL in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

Article 24

Application

1.    This Treaty shall apply to offenses committed before as well as after the date it enters into force.

-22-

2.   Upon the entry into force of this Treaty, the
Treaty of Extradition between the United States of America and
the Republic of France signed at Paris January 6, 1909 and the
Supplementary Convention signed at Paris February 12, 1970 with
Exchanges of Letters signed at Paris June 2 and 11, 1970, shall
cease to have effect between the United States of America and
the French Republic.   Nevertheless, the 1909 Treaty, as
supplemented in 1970, shall apply to any extradition
proceedings in which extradition documents have already been
submitted to the courts of the Requested State at the time this
Treaty enters into force.

Article 25

Ratification and Entry into Force

Each Contracting State shall notify the other of the
completion of the constitutional procedures required for the
ratification of this Treaty.   The Treaty shall enter into force
on the first day of the second month following the date of
receipt of the last notification.

-23-

## Article 26

### Termination

Either Contracting State may terminate this Treaty at any time by giving written notice to the other Contracting State through the diplomatic channel, and the termination shall be effective six months after the date of receipt of such notice.

IN WITNESS WHEREOF, the respective Plenipotentiaries have signed this Treaty.

DONE at Paris, in duplicate, this 23rd day of April, 1996, in the English and French languages, both texts being equally authentic.

**Agreed Minute on Representation**

It is agreed that each country wishes to provide the other with the greatest degree of legal representation and legal advice (at no cost to the other) as would be permitted under its constitution and laws.

In the spirit of this agreement, the two countries further agreed to provide each other legal advice and representation (including representation in court) at least equal to that given to any other country pursuant to an extradition relationship whether existing at the present time or entered into in the future.

For the United States, the agreement means that, at a minimum, the United States will provide legal counsel to review each request for extradition submitted by France with a view to advising and counseling France concerning strengths and weaknesses in its case. Further, to the extent necessary and appropriate, the legal counsel will work with France to improve the documentation in order to increase the likelihood of France's being successful in its request for extradition. Further, the United States undertakes to provide representation for France in all courtroom litigation arising in connection with a request for extradition and all pre-hearing and post-hearing matters connected therewith. Finally, the United States undertakes to provide representation for France in connection with all appellate and "Habeas Corpus" actions in regard to a request for extradition.

For France the agreement means that at a minimum, France agrees to the following:

1) to include in the file presented to the Chambre d'Accusation any memoranda or document transmitted by the U.S. Government in support of its extradition request in order to allow the United States Government to conduct a continuing written defense of its extradition request;

2) to request that the United States provide supplementary information or explanations as deemed necessary;

3) to communicate to the U.S. Government the notice of transmittal of the extradition request to the Parquet General of the Chambre d'Accusation;

4) to seek to postpone the ruling and to transfer the case to another session of the Chambre d'Accusation, in order to allow the U.S. Government, if necessary, the opportunity to argue its position and to submit additional memoranda in response to the oral arguments put forward by the defense. This postponement would be within a strict time limit and could be pronounced automatically or at the request of the Parquet;

5) to receive communications from a U.S. Consular official or official of the U.S. Department of Justice designated to represent the United States interests in matters related to the extradition request. The names of these officials will be given to the Ministry of Justice and, if necessary, the prosecutor in question, for each extradition request;

6) to provide the authorized representative of the United States an opportunity, as soon as the extradition

request is made, to furnish by note to the Ministry of Justice, all legal or factual data that he or she deems useful to support the request;

7)    to communicate to the U.S. Government, by means of notice from the Ministry of Justice to the Embassy of the United States in Paris, that the request has been transmitted to the appropriate public prosecutor's office;

8)    to notify the Embassy of the United States in Paris the date of the first hearing during which the extradition request will be examined by the Chambre d'Accusation;

9)    to provide an opportunity for the authorized representative of the United States to furnish, before the hearing, an additional note within a sufficient time period for the interested party to be notified and for the note to be added to the file;

10)   to provide an opportunity for the authorized representatives of the United States to communicate, in a timely fashion, through the Ministry of Justice, to the same degree permitted to the Ministry of Justice, with the parquet general prior to the hearing examining the extradition request.

**Instrument as contemplated by Article 3, paragraph 2, of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003, as to the application of the Extradition Treaty between the United States of America and France signed 23 April 1996**

As contemplated by Article 3, paragraph 2, of the Agreement on Extradition between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the Governments of the United States of America and the French Republic acknowledge that, in accordance with the provisions of this Instrument, the U.S.-EU Extradition Agreement is applied in relation to the bilateral Extradition Treaty between the United States of America and France signed 23 April 1996 (hereafter "the 1996 Treaty on Extradition") under the following terms:

I

A. Article 5, paragraph 1, of the U.S.-EU Extradition Agreement provides:

"Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in Article 7."

B. Article 5, paragraph 1, of the U.S.-EU Extradition Agreement shall govern the mode of transmission of the extradition request and supporting documents and shall be applied in place of Article 10, paragraph 1, of the 1996 Treaty on Extradition. For purposes of applying its terms, the reference to "Article 7" refers to Part III of this Instrument.

II

A. Article 5, paragraph 2, of the U.S.-EU Extradition Agreement provides:

"Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the requesting State shall be admissible in extradition proceedings in the requested State without further certification, authentication, or other legalization."

B. Article 5, paragraph 2, of the U.S.-EU Extradition Agreement shall govern the requirements concerning certification, authentication or legalization of the extradition request and supporting documents, and shall be applied in place of Article 11 of the 1996 Treaty on Extradition. For purposes of applying its terms, "Ministry of Justice" means, for France, the Ministry of Justice of France, and, for the United States of America, the United States Department of Justice; "Ministry or Department responsible for foreign affairs" means, for France, the Ministry of Foreign Affairs of France, and for the United States of America, the United States Department of State.

III

A. Article 7, paragraph 1, of the U.S.-EU Extradition Agreement provides:

"If the person whose extradition is sought is held under provisional arrest by the requested State, the requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to Article 5(1), by submitting the request and documents to the Embassy of the requested State located in the requesting State. In that case, the date of receipt of such request by the Embassy shall be considered to be the date of receipt by the requested State for purposes of applying the time limit that must be met under the applicable extradition treaty to enable the person's continued detention."

B. Article 7, paragraph 1, of the U.S.-EU Extradition Agreement shall provide an alternative method for transmission of the request for extradition and supporting documents following provisional arrest, and shall supplement the provisions of Articles 10 and 13 of the 1996 Treaty on Extradition. For purposes of applying its terms, the reference to "Article 5(1)" relates to Part I of this Instrument.

1

IV

A.    Article 10 of the U.S.-EU Extradition Agreement provides:

"Requests for extradition or surrender made by several states

1.    If the requested State receives requests from the requesting State and from any other State or States for the extradition of the same person, either for the same offence or for different offences, the executive authority of the requested State shall determine to which State, if any, it will surrender the person.

2.    If a requested Member State receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offence or for different offences, the competent authority of the requested Member State shall determine to which State, if any, it will surrender the person. For this purpose, the competent authority shall be the requested Member State's executive authority if, under the bilateral extradition treaty in force between the United States and the Member State, decisions on competing requests are made by that authority; if not so provided in the bilateral extradition treaty, the competent authority shall be designated by the Member State concerned pursuant to Article 19.

3.    In making its decision under paragraphs 1 and 2, the requested State shall consider all of the relevant factors, including, but not limited to, factors already set forth in the applicable extradition treaty, and, where not already so set forth, the following:

    (a)    whether the requests were made pursuant to a treaty;

    (b)    the places where each of the offences was committed;

    (c)    the respective interests of the requesting States;

    (d)    the seriousness of the offences;

    (e)    the nationality of the victim;

    (f)    the possibility of any subsequent extradition between the requesting States; and

    (g)    the chronological order in which the requests were received from the requesting States."

B.    Article 10 of the U.S.-EU Extradition Agreement shall govern the decision on requests made by several States for the extradition or surrender of the same person and shall be applied in place of Article 17 of the 1996 Treaty on Extradition. For purposes of Article 10, paragraph 2, and Article 19 of the U.S.-EU Extradition Agreement, if France receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, the "Chambre de l'instruction de la Cour d'Appel" shall be the competent authority to determine to which State the person will be surrendered.

V

A.    Article 11 of the U.S.-EU Extradition Agreement provides:

"Simplified extradition procedures

If the person sought consents to be surrendered to the requesting State, the requested State may, in accordance with the principles and procedures provided for under its legal system, surrender the person as expeditiously as possible without further proceedings. The consent of the person sought may include agreement to waiver of protection of the rule of specialty."

B.    Article 11 of the U.S.-EU Extradition Agreement shall govern the use of simplified extradition procedures and shall supplement the provisions of the 1996 Treaty on Extradition.

2

## VI

A.   Article 13 of the U.S.-EU Extradition Agreement provides:

"Capital punishment

Where the offence for which extradition is sought is punishable by death under the laws in the requesting State and not punishable by death under the laws in the requested State, the requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the requesting State, on condition that the death penalty if imposed shall not be carried out. If the requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the requesting State does not accept the conditions, the request for extradition may be denied."

B.   Article 13 of the U.S.-EU Extradition Agreement shall govern extradition with respect to conduct punishable by death in the Requesting State and shall be applied in place of Article 7 of the 1996 Treaty on Extradition.

## VII

A.   Article 14 of the U.S.-EU Extradition Agreement provides:

"Sensitive information in a request

Where the requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the requested State to determine the extent to which the information can be protected by the requested State. If the requested State cannot protect the information in the manner sought by the requesting State, the requesting State shall determine whether the information shall nonetheless be submitted."

B.   Article 14 of the U.S.-EU Extradition Agreement shall govern consultations where the Requesting State contemplates the submission of particularly sensitive information in support of a request for extradition, and shall supplement the provisions of the 1996 Treaty on Extradition.

## VIII

In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

This Instrument shall not apply to requests for extradition made prior to its entry into force.

## IX

This Instrument shall be subject to the completion by the United States of America and France of any necessary applicable internal procedures for entry into force. The Governments of the United States of America and the French Republic shall thereupon exchange instruments indicating that any such measures have been completed. This Instrument shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

In the event of termination of the U.S.-EU Extradition Agreement, this Instrument shall be terminated and the 1996 Treaty on Extradition shall be applied.

3

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at The Hague, in duplicate, this 30 day of September 2004 , in the English and French languages, both texts being equally authentic.

FOR THE GOVERNMENT OF                    FOR THE GOVERNMENT OF
THE UNITED STATES OF AMERICA:            THE FRENCH REPUBLIC:

4

INSTRUMENT

PRÉVU PAR L'ARTICLE 3, PARAGRAPHE 2,

DE L'ACCORD EN MATIÈRE D'EXTRADITION

ENTRE LES ÉTATS-UNIS D'AMÉRIQUE

ET L'UNION EUROPÉENNE

SIGNÉ LE 25 JUIN 2003,

RELATIF À L'APPLICATION

DU TRAITÉ D'EXTRADITION

SIGNÉ LE 23 AVRIL 1996

ENTRE LES ÉTATS-UNIS D'AMÉRIQUE

ET LA FRANCE

Comme prévu par l'article 3, paragraphe 2, de l'Accord en matière d'extradition signé entre les États-Unis d'Amérique et l'Union européenne le 25 juin 2003 (ci-après dénommé « l'Accord d'extradition UE-EU »), le Gouvernement des États-Unis d'Amérique et le Gouvernement de la République française reconnaissent que, conformément aux dispositions du présent Instrument, l'Accord d'extradition UE-EU s'applique dans les conditions ci-après au traité bilatéral d'extradition signé le 23 avril 1996 entre les États-Unis d'Amérique et la France (ci-après dénommé « le Traité d'extradition de 1996 ») :

I

A. L'article 5, paragraphe 1, de l'Accord d'extradition UE-EU stipule :

« Les demandes d'extradition et les pièces justificatives sont transmises par la voie diplomatique, y compris selon les modalités visées à l'article 7. »

B. L'article 5, paragraphe 1, de l'Accord d'extradition UE-EU régit le mode de transmission des demandes d'extradition et des pièces justificatives, et s'applique en lieu et place de l'article 10, paragraphe 1, du Traité d'extradition de 1996. Pour l'application de ses dispositions, la référence à « l'article 7 » se rapporte à la partie III du présent Instrument.

II

A. L'article 5, paragraphe 2, de l'Accord d'extradition UE-EU stipule :

« Les documents accompagnés du certificat ou revêtus du cachet du ministère de la justice ou du ministère ou département de l'État requérant chargé des affaires étrangères sont recevables dans les procédures d'extradition de l'État requis sans autre certification, authentification ou autre forme de légalisation. »

B. L'article 5, paragraphe 2, de l'Accord d'extradition UE-EU régit les conditions de certification, d'authentification ou de légalisation des demandes d'extradition et des pièces justificatives, et s'applique en lieu et place de l'article 11 du Traité d'extradition de 1996. Pour l'application de ses dispositions, l'expression « Ministère de la Justice » désigne, pour la France, le Ministère de la Justice, et pour les États-Unis d'Amérique, le Ministère de la Justice des États-Unis, et l'expression « Ministère ou département chargé des affaires étrangères » désigne, pour la France, le Ministère des Affaires étrangères, et pour les États-Unis d'Amérique, le Département d'État.

## III

A.   L'article 7, paragraphe 1, de l'Accord d'extradition UE-EU stipule :

> « Si la personne dont l'extradition est demandée est maintenue en détention provisoire par l'État requis, l'État requérant peut s'acquitter de son obligation de transmettre sa demande d'extradition et les pièces justificatives par la voie diplomatique conformément à l'article 5, paragraphe 1, en présentant cette demande et ces pièces à l'ambassade de l'État requis établie dans l'État requérant. Dans ce cas, la date de réception de cette demande par l'ambassade est considérée comme étant la date de réception par l'État requis aux fins de l'application du délai devant être respecté en vertu du traité d'extradition en vigueur afin que la personne puisse être maintenue en détention. »

B.   L'article 7, paragraphe 1, de l'Accord d'extradition UE-EU prévoit un mode alternatif de transmission des demandes d'extradition et des pièces justificatives à la suite d'une arrestation provisoire, et complète les dispositions des articles 10 et 13 du Traité d'extradition de 1996. Pour l'application de ses dispositions, la référence à « l'article 5(1) » se rapporte à la partie I du présent Instrument.

## IV

A.   L'article 10 de l'Accord d'extradition UE-EU stipule :

> « Demandes d'extradition ou de remise présentées par plusieurs États

1.   Si l'État requis reçoit, pour la même personne, des demandes d'extradition émanant de l'État requérant et d'un ou plusieurs autres États, que ce soit pour la même infraction ou pour des infractions différentes, le pouvoir exécutif de l'État requis détermine à quel État la personne sera remise, le cas échéant.

2.   Si un État membre requis reçoit une demande d'extradition des États-Unis d'Amérique et une demande de remise au titre d'un mandat d'arrêt européen pour la même personne, que ce soit pour la même infraction ou pour des infractions différentes, l'autorité compétente de l'État membre requis détermine à quel État la personne sera remise, le cas échéant. À cette fin, l'autorité compétente est le pouvoir exécutif de l'État membre requis si, aux termes du traité d'extradition bilatéral en vigueur entre les États-Unis d'Amérique et l'État membre, les décisions sur des demandes concurrentes sont prises par cette autorité; si le traité d'extradition bilatéral ne le prévoit pas, l'autorité compétente est désignée par l'État membre en vertu de l'article 19.

3.   Pour former sa décision en vertu des paragraphes 1 et 2, l'État requis prend en compte l'ensemble des éléments pertinents, y compris, mais pas seulement, ceux qui sont déjà énoncés dans le traité d'extradition en vigueur et, s'ils n'y figurent pas déjà, les éléments suivants:

a)      le fait que les demandes aient été ou non présentées en vertu d'un traité,

b)      l'endroit où chacune des infractions a été commise,

c)      les intérêts de chacun des États requérants,

d)      la gravité des infractions,

e)      la nationalité de la victime,

f)      la possibilité qu'une extradition puisse être effectuée ultérieurement entre les États requérants, et

g)      l'ordre chronologique de réception des demandes des États requérants. »

B.      L'article 10 de l'Accord d'extradition UE-EU régit la décision à prendre concernant des demandes d'extradition ou de remise portant sur la même personne, présentées par plusieurs États, et s'applique en lieu et place de l'article 17 du Traité d'extradition de 1996. Aux fins de l'article 10, paragraphe 2, et de l'article 19 de l'Accord d'extradition UE-EU, si la France reçoit une demande d'extradition des États-Unis d'Amérique et une demande de remise au titre d'un mandat d'arrêt européen pour la même personne, la « Chambre de l'instruction de la Cour d'appel » est l'autorité compétente pour déterminer à quel État la personne sera remise.

## V

A.      L'article 11 de l'Accord d'extradition UE-EU stipule :

« Procédures d'extradition simplifiées

Si la personne recherchée consent à être remise à l'État requérant, l'État requis peut, conformément aux principes et procédures prévus par son système juridique, la remettre aussi rapidement que possible sans autres formalités. Le consentement de la personne recherchée peut comprendre la renonciation à la protection offerte par la règle de spécialité. »

B.      L'article 11 de l'Accord d'extradition UE-EU régit l'utilisation des procédures d'extradition simplifiées et complète les dispositions du Traité d'extradition de 1996.

# VI

A.   L'article 13 de l'Accord d'extradition UE-EU stipule :

« Peine de mort

Lorsque l'infraction pour laquelle l'extradition est demandée est punissable de la peine de mort aux termes de la loi de l'État requérant et ne l'est pas aux termes de la loi de l'État requis, l'État requis peut accorder l'extradition à condition que la peine de mort ne soit pas prononcée à l'encontre de la personne recherchée ou, si, pour des raisons de procédure, cette condition ne peut être respectée par l'État requérant, à condition que la peine de mort, si elle est prononcée, ne soit pas exécutée. Si l'État requérant accepte l'extradition sous réserve des conditions énoncées dans le présent article, il respecte ces conditions. Si l'État requérant n'accepte pas les conditions, l'extradition peut être refusée. »

B.   L'article 13 de l'Accord d'extradition UE-EU régit l'extradition en ce qui concerne les faits passibles de la peine de mort dans l'État requérant, et s'applique en lieu et place de l'article 7 du Traité d'extradition de 1996.

# VII

A.   L'article 14 de l'Accord d'extradition UE-EU stipule :

« Présence d'informations sensibles dans une demande

Lorsque l'État requérant envisage de communiquer des informations particulièrement sensibles à l'appui de sa demande d'extradition, il peut consulter l'État requis afin de déterminer dans quelle mesure ces informations peuvent être protégées par ce dernier. Si l'État requis ne peut pas protéger les informations de la manière souhaitée par l'État requérant, celui-ci détermine si ces informations seront ou non néanmoins communiquées. »

B.   L'article 14 de l'Accord d'extradition UE-EU régit les consultations lorsque l'État requérant envisage de communiquer des informations particulièrement sensibles à l'appui de sa demande d'extradition, et complète les dispositions du Traité d'extradition de 1996.

# VIII

Conformément à l'article 16 de l'Accord d'extradition UE-EU, ledit Accord s'applique aux infractions commises tant avant qu'après son entrée en vigueur.

Ledit Accord ne s'applique pas aux demandes d'extradition formulées avant son entrée en vigueur.

## IX

Le présent Instrument est soumis, le cas échéant, à l'accomplissement par les États-Unis d'Amérique et la France de leurs procédures internes respectives applicables qui sont nécessaires pour l'entrée en vigueur. Les gouvernements des États-Unis d'Amérique et de la France échangeront ensuite les instruments indiquant que ces procédures ont été menées à bien. Le présent Instrument entrera en vigueur à la date d'entrée en vigueur de l'Accord d'extradition UE-EU.

En cas de dénonciation de l'Accord d'extradition UE-EU, le présent Instrument cessera d'être en vigueur et le Traité d'extradition de 1996 sera appliqué.

EN FOI DE QUOI, les soussignés, dûment autorisés par leur Gouvernement respectif, ont signé le présent Instrument.

Fait à *Le Haye* , le *30 septembre 2004* en double exemplaire en langues française et anglaise, les deux textes faisant également foi.

POUR LE GOUVERNEMENT
DES ÉTATS-UNIS D'AMÉRIQUE

POUR LE GOUVERNEMENT
DE LA REPUBLIQUE FRANCAISE